Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8974 | **DATE** | 6/23/2004 |
| **CASE TITLE** | Richard Johnson vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment (15) is granted in part. Defendant's motion for summary judgment (16) is denied. The Commissioner's final decision is reversed, and the case is remanded for action consistent with the court's memorandum and order. Plaintiff's request for attorneys' fees is denied without prejudice as premature. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| SLB | courtroom deputy's initials | 2004 JUN 23 PM 7:05 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



```
UNITED STATES DISTRICT COURT          JUN 2 4 2004
  NORTHERN DISTRICT OF ILLINOIS
       EASTERN DIVISION
```

RICHARD JOHNSON,                )
                                )
                    Plaintiff,  )
                                )       Case No. 03 C 8974    JUN 2 4 2004
           v.                   )
                                )       George W. Lindberg
JO ANNE B. BARNHART,            )       Senior United States District Judge
COMMISSIONER OF THE SOCIAL      )
SECURITY ADMINISTRATION,        )
                                )
                    Defendant.  )

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the Commissioner's final decision to deny Plaintiff's applications for a period of disability and disability insurance benefits and Supplemental Security Income. Plaintiff's complaint, *inter alia*, asks the Court to (1) find that Plaintiff is entitled to the benefits sought in his applications or, alternatively, reverse the Commissioner's final decision with respect to Plaintiff's applications and remand the case for additional administrative hearings and (2) award Plaintiff his attorneys' fees.

Plaintiff and Defendant have filed cross-motions for summary judgment.[1] Plaintiff's motion is hereby granted in part and Defendant's motion is hereby denied.

*Legal Standards – Summary Judgment*

It is well-established that "[c]ross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the

---

[1]Defendant's response to Plaintiff's summary judgment motion consists of Defendant's summary judgment motion. In the interest of judicial economy, Defendant's summary judgment motion will be construed as both (1) Defendant's response to Plaintiff's summary judgment motion and (2) a cross-motion for summary judgment.

administrative tribunal that the court is reviewing." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 237 F.3d 813, 816 (7th Cir. 2001) (citations omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 699, 703 (7th Cir. 2004) (affirming district court decision denying plaintiff's cross-motion for summary judgment and granting Commissioner's cross-motion for summary judgment). This Court will grant summary judgment when "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003) ("All facts and inferences are viewed in the light most favorable to each nonmoving party. . . .") (citation omitted).

*Factual and Procedural Background*

Plaintiff did not receive a high school diploma; after completing the tenth grade, he left school to care for his sick mother.[2] Plaintiff has held a number of different jobs, including (1) wheelchair attendant/cart driver, (2) construction worker, (3) electrician, (4) hauler, and (5) package loader. However, he last worked in 2001, answering the telephone at his brother's construction company for approximately one month. Prior to that temporary position, Plaintiff was last employed as a construction worker in 1999. Plaintiff's employment history consists of semi-skilled positions that required light, medium, and/or heavy levels of exertion. When he was about twenty-five (25) years old, Plaintiff fell from a truck while at work. At the time of the accident, Plaintiff received medical treatment and, shortly thereafter, resumed working.[3]

On July 20, 2000, Plaintiff underwent a laparoscopic nephrectomy. His pre-operative evaluation was described as unremarkable. Testing performed prior to surgery included an

---

[2]Plaintiff has not received a GED.

[3]Plaintiff testified that he began to suffer from back pain after the accident.

echocardiogram, chest x-rays, an abdominal x-ray, and a CT scan of the abdomen. None of these tests disclosed that Plaintiff suffered from any abnormalities, renal or otherwise. Immediately following the procedure, no complications were reported. On August 4, 2000, Plaintiff's scars were well-healed except for an open, mid-line scar where fluid had been drained. By August 11, 2000, the wound was completely healed with no reported complaints or complications. Nevertheless, Plaintiff did not resume construction work because doctors had prohibited him from engaging in heavy lifting.[4]

Alleging that he became disabled on March 14, 2000, Plaintiff filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on July 31, 2000. On December 13, 2000, Dr. Peter Biale examined Plaintiff at the request of the Bureau of Disability Determination Services. Dr. Biale made a number of findings with respect to Plaintiff's physical condition:

(1) Plaintiff's extremity joint motion, extremity strength, and reflexes were normal and his sensation was intact.

(2) Plaintiff experienced no acute distress or atrophy, moved around with no difficulty or discomfort, and ambulated normally.

(3) Plaintiff had full range of motion in the cervical and dorsal spine and reduced motion in the lumbosacral spine.

(4) Plaintiff had difficulty squatting and heel walking/toe walking, complained of pain when he moved between a sitting position and a supine position, and

---

[4]Plaintiff testified that he has not been able to secure alternate employment because of this restriction and that additional back problems resulted from the laparoscopic nephrectomy.

> exhibited tenderness in the right and left paravertebral muscles.

(5) Plaintiff's bilateral straight leg raising was limited to seventy (70) degrees, his flexion was limited to sixty (60) degrees, his extension was limited to fifteen (15) degrees, and his lateral flexion was limited to fifteen (15) degrees, bilaterally.

On December 22, 2000, Dr. E. C. Bone reviewed Plaintiff's medical records and assessed his ability to work. Dr. Bone's findings are reflected in Plaintiff's Residual Functional Capacity Assessment ("RFC"). Plaintiff's RFC indicated that Plaintiff could frequently lift and/or carry up to ten (10) pounds, occasionally lift and/or carry up to twenty (20) pounds, stand and/or walk for a total of at least two (2) hours in an eight (8) hour work day, and sit for a total of about six (6) hours in an eight (8) hour work day. Additionally, Plaintiff was able to frequently balance, kneel, crouch, and crawl and occasionally climb and stoop. Relying on Plaintiff's RFC, a Bureau of Disability Determination Services Adjudicator concluded: (1) Plaintiff's lifting and carrying capacity were sufficient for light work, (2) Plaintiff's standing and walking limitations necessitated that Plaintiff's ability to engage in sedentary work be explored, (3) the postural and environmental restrictions noted in Plaintiff's RFC did not substantially reduce this range of work, and (4) Plaintiff was capable of performing various jobs, but incapable of performing any of his past relevant work.

Plaintiff's applications for benefits were denied on January 19, 2001. On February 2, 2001, Plaintiff timely filed a request for reconsideration of his applications. Upon reconsideration, Plaintiff's applications were once again denied on May 17, 2001. Shortly thereafter, Plaintiff filed a formal request to have his case heard by an administrative law judge ("ALJ"). Plaintiff's hearing was originally noticed for June 27, 2002. Following a brief continuance to allow Plaintiff an

opportunity to obtain counsel, the hearing was conducted on August 13, 2002.

During the August 13, 2002 hearing and in other papers, Plaintiff provided the following testimony and information concerning his physical condition. Plaintiff was thirty-five (35) years old at the time of the hearing. He could not stand or sit for prolonged periods of time or walk, uninterrupted, a distance of more than about two blocks. He could partially bend at the waist, but not backwards. Additionally, it was painful for him to kneel or squat, and he could not squat repeatedly or maintain a squatted position. Although he was able to lift his thirty (30) to forty (40) pound son, he had to squat prior to doing so and could only hold him for a short time.

Plaintiff further testified that he felt pain throughout the entire lower left side of his body, including his legs. Moreover, Plaintiff's legs became numb if he sat for too long, and he did not drive because of stiffness in his legs. His back pain also interfered with his nighttime sleeping and forced him to take frequent naps during the day. To relieve this pain, Plaintiff took ibuprofen and prescription pain medications[5], applied topical ointments, and bathed in Epsom salt. He also exercised as recommended by his doctor, but the exercises did not help to alleviate his pain.

During the hearing, Plaintiff explained that he could travel by bus. However, he was not able to travel by elevated train or train because both modes of transportation irritated his back. Although he could provide only limited assistance with household chores, Plaintiff was able to shop for groceries, carry light grocery bags, cook, and spend the day with his children. In addition, he could read, play cards and games, attend church, and watch television. However, he was not able to perform any of his past jobs because he could not engage in heavy lifting or operate construction equipment for any extended period of time.

---

[5]Plaintiff testified that these medications caused him to be drowsy.

Plaintiff testified that he did not have health insurance or a medical card, but that he had received medication and treatment at a county medical facility and from a doctor who had moved out of the country prior to the August 13, 2002 hearing. He had also received treatment at the St. Bernard Hospital and Jackson Park Hospital emergency rooms. Plaintiff explained that his treating physicians recommended he see a specialist, but that he could not afford to do so.

Medical records provided to the ALJ indicated that Plaintiff sought emergency room care on multiple occasions during the years 1999 to 2001. The records reflected that on several of those occasions Plaintiff left the emergency room prior to being discharged and/or fully examined and treated by a physician. Plaintiff also sought emergency room treatment at Jackson Park Hospital on June 17, 2002, but again left without being discharged and/or fully examined and treated by a physician.

The aforementioned medical records also established that Plaintiff received treatment for lower back pain at the Jackson Park Hospital emergency room on April 17, 2001. Plaintiff was able to walk with a steady gait, and left the hospital ambulatory and in no acute distress after being medicated and treated. On June 20, 2001, Plaintiff received emergency room treatment at St. Bernard's Hospital for pain in his left flank. When admitted, Plaintiff ambulated steadily, walked with a steady gait, and reported moderate pain that was exacerbated by movement. Attending medical personnel noted tenderness in the left iliac area and musculoskeletal pain at the site where his laparoscopic nephrectomy was performed. Radiology records established the presence of surgical clips on Plaintiff's left side. After he was examined, Plaintiff was treated, prescribed pain medication, and released.

After conducting the hearing and reviewing the administrative record, the ALJ made

the following findings: (1) Plaintiff suffered from low back pain, but had no impairment or combination of impairments that met or medically equaled a listed impairment, (2) Plaintiff's complaints were not fully credible, (3) Plaintiff's employment history provided him with no transferable skills, and (4) Plaintiff was unable to perform his past relevant work, but retained the RFC to perform a significant range of light work – lifting and/or carrying ten (10) pounds frequently and twenty (20) pounds occasionally, standing and/or walking at least two (2) hours in an eight (8) hour work day, sitting about six (6) hours, and occasionally climbing and stooping. Based on these findings and an application of the Medical-Vocational Guidelines, the ALJ concluded on October 25, 2002 that Plaintiff was not disabled. On October 14, 2003, the Social Security Administration's Appeals Council denied Plaintiff's request for review and declared that the ALJ's October 25, 2002 decision was the Commissioner's final decision. On December 11, 2003, Plaintiff appealed the Commissioner's final decision to this Court.

*Analysis*

In reviewing the Commissioner's final decision, the Court must consider the entire record but may not conduct its own analysis of whether Plaintiff is severely impaired as defined by the relevant administrative regulations. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (The Court must also refrain from "reweigh[ing] evidence, resolv[ing] conflicts in the record, decid[ing] questions of credibility, or, in general, substitut[ing] its own judgment for that of the Commissioner.") (citation omitted); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (same). Review of the ALJ's factual findings is "limited to determining whether the...findings are supported

by substantial evidence."[6] *Young*, 362 F.3d at 1001 (citations omitted); *see also Scheck*, 357 F.3d at 699 (same). Substantial evidence is defined as evidence that "a reasonable person would accept. . .as adequate to support the conclusion." *Young*, 362 F.3d at 1001 (citation omitted); *see also Scheck*, 357 F.3d at 699 (same).

The substantial evidence standard is "a deferential but not entirely uncritical standard. . . ." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (citation omitted). While the Court is obligated to conduct "a critical review of the evidence[,]"[7] factual findings that are supported by substantial evidence must be affirmed "even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 699 (citation omitted); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation and internal quotation marks omitted).

The Social Security Administration's regulations provide a five-step evaluation process for use in determining whether a claimant is disabled. *See Young*, 362 F.3d at 1000; *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993) (same). This process requires the ALJ to determine in sequence whether a claimant: (1) is presently employed; (2) has a severe impairment; (3) has an impairment that is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform any other work within the national and

---

[6]Of course, the Commissioner's final decision must also be "free of legal error." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (citation omitted); *see also Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (same). "Conclusions of law are not entitled to deference, however, so if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997) (citation omitted).

[7]The ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues" and "must build an accurate and logical bridge from the evidence to his conclusion. . . ." *Lopez*, 336 F.3d at 539 (citations and internal quotation marks omitted).

8

local economy. *See Scheck*, 357 F.3d at 699-700; *Campbell*, 988 F.2d at 743 (same). If at any step the ALJ "can make a conclusive finding. . .that the claimant either is or is not disabled, then she need not progress to the next step." *Young*, 362 F.3d at 1000 (citation omitted). "Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment." *Campbell*, 988 F.2d at 743. However, "[i]f the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Id.* (citation omitted).

With respect to Steps One, Two, and Three, the ALJ found: (1) Plaintiff "has not engaged in substantial gainful activity since his alleged onset date" and (2) Plaintiff "has low back pain, an impairment that is severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations [sic] No. 4." Appropriately, the ALJ next turned his attention to "whether [Plaintiff] retains the [RFC] to perform the requirements of his past relevant work [(Step Four)] or other work existing in significant numbers in the national economy [(Step Five)]."

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. . .[and] must be assessed based on all the relevant evidence in the record." *Young*, 362 F.3d at 1000-01 (citations omitted). Here, the ALJ stated that he considered "all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . . ." He also considered all of the available "medical opinions, which are statements from acceptable medical sources. . .[and]

9

reflect judgments about the nature and severity of the impairment and resulting limitations. . . ."[8]

After reviewing the entire record (including Plaintiff's testimony), the ALJ concluded that Plaintiff "retains the [RFC] for a limited range of light work: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking at least 2 hours in an 8-hour workday, sitting about 6 hours, occasional climbing and occasional stooping." While acknowledging that Plaintiff "has severe impairments that cause significant limitations of his ability to perform basic work activities[,]" the ALJ stated that his "assessment of [Plaintiff's RFC] allows for many of his subjective complaints and limitations." Based on Plaintiff's RFC, the ALJ found that Plaintiff could no longer perform his past relevant work. This finding forced the ALJ to consider whether Plaintiff can perform any other work within the national or local economy.

With respect to Step Five, the ALJ considered Plaintiff's RFC, age, education, and vocationally-relevant past work experience. Upon doing so, he found that although Plaintiff "has very little vocational advantage over an unskilled person and does not have transferable skills from work previously performed[,]. . .he is capable of performing a significant range of light work as defined in 20 C.F.R. §§ 404.1567 and 416.967." The ALJ explained:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities.

---

[8]Materials reviewed by the ALJ also included, *inter alia*, (1) the "objective medical evidence[,]", (2) "statements from treating and examining physicians in assessing [Plaintiff's RFC]," and (3) "the reports of the state agency medical consultants as well as. . .other treating, examining and non-examining medical sources."

Although he found that Plaintiff was able to perform a significant range of light work, the ALJ conceded that Plaintiff's "ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations." For example, Plaintiff's RFC "indicates lifting and carrying capacity associated with ability for light work but standing and walking is limited to less than 6 hours per work day." Additionally, Plaintiff had postural restrictions with respect to climbing and stooping. Nevertheless, the ALJ concluded that while the "additional limitations preclude performance of the *full* range of light work, the[y]. . .do not significantly erode the occupational base of jobs at that level. . .and there remain a significant number of jobs that [Plaintiff] can perform." Accordingly, the ALJ applied the Medical-Vocational Guidelines and issued a finding of "not disabled."

Plaintiff objects to the ALJ's ultimate finding and presents a number of arguments in support of his position. Initially, Plaintiff argues that "the ALJ's decision contains a fundamental, logical inconsistency. . .[– t]he ALJ considers [Plaintiff] incapable of the standing/walking requirements of light work, yet decides that [Plaintiff] can perform a significant range of light work." The Court agrees.[9]

---

[9] As an initial matter, the ALJ's decision provides no guidance with respect to the meaning of the following phrase – "a significant range of light work." Nor does it adequately explain the basis for his conclusion that "there remain a significant number of jobs that [Plaintiff] can perform." Instead, the ALJ summarily concludes that Plaintiff's "limitations do not significantly erode the occupational base of jobs at that level [light work]" despite his finding that Plaintiff may only have the ability to stand and/or walk for a *third* of the time required to perform the full range of light work. These deficiencies leave the Court with no choice but to remand the case to the ALJ. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("We have repeatedly admonished ALJs to 'sufficiently articulate [their] assessment of the evidence to. . .enable us to trace the path of [their] reasoning.'") (citation omitted); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) ("[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.").

11

20 C.F.R. §§ 404.1567 and 416.967 provide the following description of "[l]ight work:"

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567, 416.967. Social Security Ruling 83-10 adds:

> Relatively few unskilled light jobs are performed in a seated position. "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-*6 (Soc. Sec. Admin. 1983). These provisions suggest that the ability to stand and/or walk for a considerable amount of time is usually essential to the performance of unskilled light work. *See* 20 C.F.R. §§ 404.1567, 416.967; Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-*6. Here, the ALJ concluded that Plaintiff retained the RFC "to perform a significant range of light work" because he could, *inter alia*, "lift[] and/or carry[] 20 pounds occasionally and 10 pounds frequently" and "stand[] and/or walk[] at least 2 hours in an 8-hour workday."

The ALJ's finding concerning Plaintiff's ability to stand and/or walk belies his conclusion that Plaintiff can perform "a significant range of light work." With respect to Plaintiff's RFC, the ALJ found that Plaintiff retains the ability to lift and/or carry twenty (20) pounds

12

occasionally and ten (10) pounds frequently. Applying Social Security Ruling 83-10, Plaintiff must therefore be able to remain on his feet (*e.g.*, stand and/or walk) for at least two (2) hours and forty (40) minutes of an eight (8) hour workday. *See* Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 ("Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). However, the ALJ found that Plaintiff is only able to stand and/or walk "at least 2 hours in an 8-hour workday, sitting about 6 hours." Because the maximum amount of time that Plaintiff can stand and/or walk may be limited to two (2) hours, the ALJ's factual findings concerning Plaintiff's ability to lift and/or carry and his ability to stand and/or walk are inconsistent. More importantly, the ALJ's decision does not sufficiently explain how Plaintiff could still perform "a significant range of light work" when he may (1) not be able to stand and/or walk for the length of time required to perform the lifting and/or carrying requirements of light work and (2) be able to stand and/or walk for only a third of the time required to perform the full range of light work. *See also* 20 C.F.R. §§ 404.1567, 416.967 ("To be considered capable of performing a *full or wide range of light work, you must have the ability to do substantially all of these activities.*") (emphasis added); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *4 (Soc. Sec. Admin. 1983) ("The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday."); *Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir. 1992) ("[L]ight work requires a capacity to stand and walk for six hours a day.") (citation omitted). Accordingly, the Court concludes that the ALJ's factual findings are not supported by substantial evidence. *See, e.g., Lopez*, 336 F.3d at 539 (The ALJ's decision "cannot

13

stand if it lacks evidentiary support or an adequate discussion of the issues" and "must build an accurate and logical bridge from the evidence to his conclusion. . . .") (citations and internal quotation marks omitted).

Second, Plaintiff argues that the ALJ erred by (1) disregarding evidence that Plaintiff has experienced increased pain and residual complications as a result of his July 20, 2000 laparoscopic nephrectomy and (2) failing to seek testimony from a medical expert.[10] The Court is not persuaded. Plaintiff does not identify any evidence in the record that establishes the necessity of medical expert testimony. Nor could the Court locate any evidence (aside from Plaintiff's testimony) to support Plaintiff's claim that he is plagued by ongoing, residual pain resulting from his laparoscopic nephrectomy.[11] The ALJ need not "provide a written evaluation of every piece of evidence that is presented." *Scheck*, 357 F.3d at 700 (citation and internal quotation marks omitted). His consideration of Plaintiff's testimony is sufficient. *See In re Johnson*, Soc. Sec. Admin. Office

---

[10]Plaintiff also attacks the ALJ's statement that Plaintiff was "in good health" prior to his laparoscopic nephrectomy and his finding that Plaintiff was a good candidate for the procedure. Plaintiff argues that "the ALJ was required to have the assistance of a medical expert to specifically address th[at] issue[]. . . ." The Court disagrees. The ALJ's statement and finding are supported by substantial evidence – the results of Plaintiff's pre-operative medical evaluation. *See also Scheck*, 357 F.3d at 699 (Factual findings that are supported by substantial evidence must be affirmed "even if an alternative position is also supported by substantial evidence.") (citation omitted). Moreover, Plaintiff identifies no medical evidence that suggests Plaintiff's back impairments made him a less than optimal candidate for a laparoscopic nephrectomy.

[11]Although medical records from Plaintiff's June 20, 2001 visit to the St. Bernard's Hospital emergency room indicate the existence of musculoskeletal pain at the site where Plaintiff's laparoscopic nephrectomy was performed and the presence of surgical clips, no evidence exists to establish that this pain was ongoing or a residual effect of the procedure. In fact, Plaintiff was examined by physicians on August 4, 2000, August 11, 2000, and December 13, 2000, and no complications were discovered or reported with respect to his laparoscopic nephrectomy. *See also Scheck*, 357 F.3d at 699 (Factual findings that are supported by substantial evidence must be affirmed "even if an alternative position is also supported by substantial evidence.") (citation omitted).

14

of Hr'gs & Appeals Decision, at 4 (Oct. 25, 2002) (Gustafson, A.L.J.) ("After carefully considering the entire record in this matter, including the testimony of the claimant,. . .I acknowledge that the claimant has severe impairments that cause significant limitations of his ability to perform basic work activities. Indeed, the assessment of the claimant's [RFC] allows for many of his subjective complaints and limitations. As discussed more fully below, however, to the extent that the claimant alleges an inability to perform any significant work activities on a sustained basis, his allegations and subjective complaints are found not to be fully credible when considered in light of the entirety of the evidence of record."). And the Court will "reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Jens*, 347 F.3d at 213 (citation and internal quotation marks omitted). After reviewing the evidence and testimony, the ALJ found that Plaintiff suffered from the severe impairment of low back pain. This finding has not been called into question.[12] Because Plaintiff failed to identify any disregarded evidence that could corroborate his testimony concerning ongoing, residual pain resulting from his laparoscopic nephrectomy, the Court cannot conclude that an error was committed.

Finally, Plaintiff argues that the ALJ erred by disregarding "evidence that [Plaintiff's] medication causes drowsiness." Once again, the Court is not persuaded. Although drowsiness may be a potential side effect of at least one of Plaintiff's pain medications, Plaintiff does not identify any evidence (aside from his own testimony) that suggests Plaintiff suffered from drowsiness and that the condition affected his ability to work. Moreover, a review of the record revealed no evidence,

---

[12]Additionally, Plaintiff has not explained why a separate finding concerning his complaint that he suffers from ongoing, residual pain specifically resulting from his laparoscopic nephrectomy is necessary in light of the ALJ's finding concerning Plaintiff's low back pain.

15

medical or otherwise, to corroborate Plaintiff's claim.[13] As noted above, the ALJ is not required to provide a written evaluation of every aspect of Plaintiff's testimony. *See Scheck*, 357 F.3d at 700. It is enough that he considered the same before reaching his decision. *See In re Johnson*, Soc. Sec. Admin. Office of Hr'gs & Appeals Decision, at 4 (Oct. 25, 2002) (Gustafson, A.L.J.). Because Plaintiff failed to identify any disregarded evidence to corroborate his claim, the Court will defer to the ALJ with respect to the credibility of Plaintiff's testimony. *See Jens*, 347 F.3d at 213.

**ORDERED:** Plaintiff's Motion for Summary Judgment [15] is granted in part. Defendant's Motion for Summary Judgment [16] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision is reversed, and the case is remanded for action consistent with this Memorandum and Order. Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. § 2412 is denied without prejudice as premature. *See* 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G). Judgment will be set forth on a separate document and entered in the civil docket. *See* Fed. R. Civ. P. 58, 79(a).

**DATED:** JUN 23 2004    **ENTER:** _____
HON. GEORGE W. LINDBERG
United States District Judge

---

[13]In fact, Plaintiff's own testimony undermines his argument. When testifying before the ALJ, Plaintiff conceded that his alleged drowsiness may have resulted from his failure to take the medication as directed.

16